## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BELLUR G. SHIVA PRASAD** | : | |
| | : | |
| **Plaintiff,** | : | Case No. 2:13-CV-272 |
| | : | |
| v. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **GENERAL ELECTRIC COMPANY/** | : | |
| **GENERAL ELECTRIC AVIATION,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>OPINION & ORDER</u>

### I.   INTRODUCTION

This matter comes before the Court on Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 7), pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*  Defendant argues that state law claims in dispute fall within the arbitration agreement with Plaintiff, and this Court should stay Plaintiff's Title VII claim pending resolution of the state law claims in arbitration. (Doc. 7 at 2).  Plaintiff responds that the arbitration proceeding is inadequate to vindicate effectively his Ohio public policy tort claim.  (Doc. 8 at 5).  Plaintiff does not respond to Defendant's request to stay arbitration proceedings pending resolution of the state law claims.

For the reasons herein, Defendant's Motion is hereby **GRANTED.**

### II.   BACKGROUND

On January 31, 2012, Plaintiff was hired by Defendant as a senior staff engineer/technologist. (Doc. 4 at ¶ 3).  Plaintiff entered into an arbitration agreement with Defendant that stated, "I agree to resolve disputes in accordance with the terms of the [agreement] and, accordingly, I agree as a condition of employment, to waive the right to pursue Covered Claims . . .  against the Company in Court (bench or jury trial) or on a class basis in Court or arbitration."  (Ex. A).

1

Part of Plaintiff's job duties were to assist in the study and creation of a highly efficient engine called the LEAP engine. (Doc. 4 at ¶ 4). Thereafter, Plaintiff made numerous complaints to his supervisors about the engine's design. (*Id.* at ¶ 8). Specifically, Plaintiff made complaints to the Federal Aviation Administration and his supervisors about Defendant not installing appropriate fuel leak detectors in the engine design. (*Id.*). On June 6, 2012, Defendant terminated Plaintiff from Defendant's employ. (*Id.* at ¶ 9). Plaintiff filed an Amended Complaint, claiming that Defendant retaliated against Plaintiff in violation of Ohio public policy. Plaintiff also brings claims for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3, as well as the Ohio Civil Rights Act, O.R.C. § 4112.02(I). (*Id.* at 7). On August 2, 2013, Defendant moved to compel arbitration on Plaintiff's state law claims, and to stay the proceedings of the Title VII claim pending resolution of the arbitration proceeding. (Doc. 7).

### III. STANDARD OF REVIEW

Under the FAA, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle a controversy thereafter . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Under its terms, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The *Stout* court sets forth a four prong test:

> First, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it

2

must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714; *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

### IV. LAW AND ANALYSIS

Defendant motions this Court to compel arbitration and to stay these proceedings in accordance with its arbitration agreement with Plaintiff. (Doc. 7 at 1). Specifically, the Defendant asserts that Plaintiff's state law claims fall within the scope of the parties' arbitration agreement. (*Id.* at 4). Defendant claims that the arbitration agreement sets forth a fair and reasonable procedure that allows the American Arbitration Association (AAA) to select independently an arbitrator if the parties cannot agree. (Doc. 10 at 4). Moreover, the arbitration agreement sets forth flexible guidelines that permit the arbitrator to allow additional discovery and trial witnesses based on the particular claims. (*Id.* at 5). Defendant further argues that the "public importance" of Plaintiff's public policy tort claim does not exempt the claim from arbitration. (*Id.* at 6-7). Lastly, Defendant asks this Court to stay Plaintiff's Title VII claim pending resolution of the state law claims in arbitration. (Doc. 7 at 4).

Plaintiff responds that Defendant's Motion should be denied because the arbitration agreement does not cover Plaintiff's public policy tort claim. (Doc. 8 at 7). Plaintiff does not set forth any argument regarding his state law statutory claim under O.R.C. § 4112.02(I). Plaintiff claims that he is acting as a "private attorney general" for purposes of his public policy tort claim, and actions brought by private attorney generals are specifically excluded from the arbitration agreement. (*Id.* at 7). Furthermore, Plaintiff claims that the arbitral forum will not effectively vindicate his public policy tort claim. (*Id.* at 5-6). Specifically, Plaintiff claims that the arbitration agreement allows Defendant to create a sole list of acceptable arbitrators. (*Id.* at 4). According to the Plaintiff, the procedural limitations set forth in the arbitration agreement, such as the limits on discovery requests, depositions, and number of witnesses, are not suitable for his public policy tort dispute. (*Id.* at 4-5). Because of the public importance of Plaintiff's

claim, Plaintiff also objects to the secret and confidential nature of the arbitration proceeding. (*Id.* at 5). Finally, Plaintiff does not respond to Defendant's request to stay the Title VII claim.

    A.    **Enforceability of the Arbitration Agreement**

We review the enforceability of an arbitration agreement according to the applicable state law contract formation. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). Contract defenses such as "fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

Plaintiff does not assert any state contract defenses that would invalidate the arbitration agreement. Rather, Plaintiff argues that the arbitration agreement should not be enforced because it will not allow Plaintiff effectively to vindicate his public policy tort claim. In creating the "effective vindication" exception to the FAA, the U.S. Supreme Court has held, "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). The "effective vindication" exception to the FAA has only been applied to claims that arise under federal statutory law. *See*, *e.g. Mitsubishi Motors Corp.*, 473 U.S. at 636-37 (holding that that arbitration is effective for claims arising under the Sherman Act); *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310-11 (2013) (upholding the waiver of class arbitration under the Sherman and Clayton Acts); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000) (holding that Plaintiffs can effectively vindicate their Truth in Lending Act claims in arbitration). This Court has found no precedent which supports the proposition that the effective vindication exception applies to a state law tort claim, nor has the Plaintiff provided any support for such a proposition. Nonetheless, this Court will address Plaintiff's concerns with the arbitration proceeding. *See Walker v. Ryan's Family Steak Houses, Inc.*, 289

F. Supp.2d 916 (M.D. Tenn. 2003) ("In determining whether specific arbitral fora have provided for proper vindication of statutory claims, the Sixth Circuit has considered such factors as the neutrality of the forum, evidence of bias, parties' opportunities for discovery, cost-splitting provisions, limitations on remedies, and the arbitrator selection process.").

Plaintiff first argues that the arbitration agreement allows Defendant to create a sole list of acceptable arbitrators. (Doc. 8 at 4). Plaintiff's argument is contrary to the plain language of the arbitration agreement. The FAA provides "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed." 9 U.S.C. § 5. The Sixth Circuit has held that an employer's unilateral control over the potential pool of arbitrators does not allow the employee effectively to vindicate its federal statutory claim, when the employer could have allowed an unbiased third-party to select the pool of potential arbitrators, such as the AAA. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004).

According to the arbitration agreement, "[i]f the parties cannot agree to the selection of an arbitrator before the submission of their joint request for arbitration, the parties will follow the [AAA] process for the arbitration selection." (Ex. B. at 3-4). The AAA process requires the parties to select an arbitrator from the list provided by the AAA. If the parties cannot agree to an arbitrator from the AAA's initial list, "the [AAA] shall submit a second list to the parties and the parties shall repeat the same selection process, as provided by the [AAA]." (*Id.* at 18). If the parties can still not come to an agreement, "the [AAA] shall make the appointment from other members of its panel of employment arbitrators without the submission of additional lists." (*Id.*). The arbitration agreement not only prevents Defendant from creating a sole list of potential arbitrators, but the agreement specifically delegates that duty to a neutral third party, the AAA. Therefore, the process of selecting an arbitrator pursuant to the agreement should be followed under 9 U.S.C. § 5.

Next, Plaintiff's argument that the arbitration procedure improperly limits pre-trial discovery is unpersuasive. Although discovery procedures may not be "as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer,* 500 U.S. at 31 (internal quotation marks omitted). Discovery limitations are not restrictive when the arbitrator has the authority to order additional discovery that the arbitrator considers necessary for the full and fair exploration of the issues in dispute. *Dortch v. Quality Restaurant Concepts, LLC.*, No. 1:12-CV-198, 2013 WL 1789603, at *7 (E.D. Tenn. Apr. 26, 2013); *Wilks v. Pep Boys*, 241 F. Supp.2d 860, 864-65 (M.D. Tenn. 2003).

Here, although the arbitration procedure places limits on document requests, depositions (Ex. B at pp. 19-20), and the amount of witnesses a party may call (*Id.* at p. 22), the arbitrator has the authority to depart from these limitation and "order such discovery . . . as the arbitration considers necessary for a full and fair exploration of the issues in dispute . . . ." (*Id.*). Contrary to Plaintiff's position, the arbitration procedure is not restrictive; but rather, the arbitrator can adjust the discovery limitations in order for Plaintiff to present a full exploration of his public policy tort claim.

Moreover, Plaintiff does not provide any support that confidential arbitration does not allow him effectively to vindicate his public policy tort claim. As stated above, when Plaintiff agreed to arbitrate this claim, he traded away the procedures of the courtroom for the simplicity and informality of arbitration. *Mitsubishi Motors Corp.*, 473 U.S. at 628. Since voluntary arbitrations are private proceedings, the parties can agree that the proceedings will be held in confidence. *Martis v. Dish Network*, No. 1:13-cv-1106, 2013 WL 6002208, at *2 (W.D. Mich. Nov. 12, 2013). Plaintiff does not provide any reasons why the confidential nature of the arbitration proceedings does not afford him the fair and full opportunity to vindicate his claim. *Asahi Glass Co., Ltd. v. Toledo Engineering Co., Inc.*, 505 F. Supp.2d 423, 437-38 (N.D. Ohio 2007) (holding that confidential arbitration which excluded Plaintiff from the proceedings did not allow employee to effectively engage in the adversarial process).

Lastly, Plaintiff's argument that arbitration is insufficient for the "severe public policy considerations involved in aircraft safety" is nothing more than a generalized attack on "arbitration as a method of weakening the protections afforded in the substantive law . . . ." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 481 (1989). As discussed above, the U.S. Supreme Court has rejected similar arguments, noting that "claims arising under a statute designed to further important social policies may be arbitrated so long as the prospective litigant effectively may vindicate [their] statutory cause of action in the arbitral forum . . . ." *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 90. The "effective vindication" exception to the FAA does not apply to Plaintiff's public policy tort claim. Even if it did, Plaintiff's assertion that claims involving important public interests are not subject to arbitration is not supported by precedent. *See*, *e.g*., *Rodriguez de Quijas*, 490 U.S. at 485 (holding that the Securities Act of 1933 can be appropriately resolved through arbitration); *Mitsubishi Motors Corp.*, 473 U.S. at 636-37 (holding that claims arising under the Sherman Act are subject to arbitration).

For the reasons set forth above, the Plaintiff and Defendant entered into an enforceable arbitration agreement.

### B. Scope of the Agreement

The arbitration agreement between Plaintiff and Defendant includes Plaintiff's public policy tort claim. The arbitration agreement states that "all claims that arise out of or are related to an employee's employment or cessation of employment . . . ." (Ex. B, p. 6). This includes "claims of violation of public policy." (Ex. B, pp. 6-7). Plaintiff's only argument that his public policy tort claim is outside the scope of the arbitration agreement is because he is acting as a private attorney general.

The arbitration agreement states, "[u]nder no circumstances shall the arbitrator have the authority to consider any putative class, collective or private attorney general claims." (Ex. B., at 22-23). Plaintiff does not provide any support for the proposition that one who brings a public policy tort claim acts as private attorney general. Moreover, this Court does not find any support for such a claim. The U.S.

7

Supreme Court has noted that, "[w]hen a plaintiff succeeds in remedying a civil rights violation . . . he serves as a private attorney general." *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). Another example is in Ohio Consumer Sales Practice Act claims, where the applicable statute bestows upon the consumer the right to act as a private attorney general. O.R.C. § 1345.09; *Stachurski v. DirecTV, Inc.*, 642 F. Supp.2d 758, 770 (N.D. Ohio 2009). These examples show that one acts as a private attorney general pursuant to a statute that advances an important public interest. There are no such examples of an individual acting as a private attorney general when bringing forth a common law tort claim.

    **C. Stay**

"If any suit or proceeding be brought . . . upon any issue referable to arbitration . . . [the Court] shall on application of one of the parties stay the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. When the Court determines that not all of Plaintiff's claims are subject to the arbitration agreement, "it must [then] determine whether to stay the remainder of the proceedings pending arbitration." *Stout*, 228 F.3d at 714. It is within the discretion of the Court to stay non-arbitrable claims when controlling its docket. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983); *Tenn. Imports, Inc. v. Filippi*, 745 F. Supp. 1314, 1323 (M.D. Tenn.1990). A Court's decision to stay a non-arbitrable claim derives from a "general concern for avoiding concurrent proceedings in cases where a decision in one forum could affect the resolution of claims in the other." *Spartech CMB, LLC v. Int'l Automotive Components Group North Am., Inc.*, No. 08-13234, 2009 WL 440905, at 13 (E.D. Mich Feb. 23, 2009). "An important consideration in determining whether or not to stay non-arbitrable claims is whether the arbitral claims predominate or whether the outcome of the arbitrable claims will depend upon the arbitrator's decision." *Rose v. Volvo Const. Equipment North Am., Inc.*, No. 1:05-cv-168, 2007 WL 846123, *13 (N.D. Ohio Mar. 20, 2007) (internal quotations omitted). In *Reidy v. Cybernoics, Inc.*, the Court found that Plaintiff's discrimination claim fell within the scope of the arbitration agreement, but Plaintiff's failure to promote claim did not. No. 1:06-cv-249, 2007 WL 496679, at *9 (S.D. Ohio Feb. 8, 2007). In ordering a stay on Plaintiff's

failure to promote claim, the Court reasoned "the two claims are related by the common element of Plaintiff's allegations of discrimination on the basis of sex." *Id.; Gordon v. Royal Palm Real Estate Investment Fund I, LLLP*, No. 09-11770, 2011 WL 835941, at *9 (E.D. Mich. Mar. 8, 2011) (holding to stay the non-arbitrable claim because there are common factual questions that will be resolved in arbitration).

In exercising its discretion, this Court will stay Plaintiff's Title VII claim pending the state law claims in arbitration. There is no dispute that the Plaintiff's Title VII claim is not within the scope of the arbitration agreement. All three of Plaintiff's claims pertain to the termination from Defendant's employment. In an attempt to prove his Ohio Civil Rights claim, Plaintiff will be presenting the same facts as he would in his Title VII proceeding, since both causes of action are identical. *See McBroom v. Barnes & Noble Booksellers, Inc.*, 747 F. Supp.2d 906, 913 (N.D. Ohio 2010) (noting that the law governing a Title VII retaliation claim is the same as a retaliation claim under the Ohio Civil Rights Act). Plaintiff's claims are not separate and distinct, but revolve around whether Defendant retaliated against Plaintiff. Furthermore, Plaintiff did not respond to Defendant's request to stay the Title VII action pending arbitration of the state law claims. As such, this Court has no reason to stay the Title VII claim pending arbitration of Plaintiff's state law claims.

## VI.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Proceedings is hereby **GRANTED.**

**IT IS SO ORDERED.**

                                                        s/ Algenon L. Marbley
                                                     **ALGENON L. MARBLEY**
                                                     **UNITED STATES DISTRICT JUDGE**

**DATED: March 10, 2014.**